# Supreme Court of Texas

═══════════

No. 22-0974

═══════════

J-W Power Company,

*Petitioner*,

v.

Sterling County Appraisal District,

*Respondent*

════════════════════════

On Petition for Review from the
Court of Appeals for the Third District of Texas

════════════════════════

*~ consolidated with ~*

═══════════

No. 22-0975

═══════════

J-W Power Company,

*Petitioner*,

v.

Irion County Appraisal District,

*Respondent*

**Argued February 20, 2024**

Justice Blacklock delivered the opinion of the Court.

Justice Young did not participate in the decision.

Just as taxpayers must pay the property taxes lawfully assessed against them, appraisal districts have a corresponding obligation to ensure appraisals are accurate and comply strictly with the law. One way the law enforces the government's obligation to impose only lawful taxes is section 25.25 of the Tax Code, which empowers taxpayers to demand that certain errors in the appraisal records be corrected by the county's appraisal review board (ARB). Tex. Tax Code § 25.25(c). J-W Power made such a demand in several counties. The appraisal districts responded that they had no obligation to consider J-W Power's demand for correct appraisal records—even if J-W Power is right that the records are erroneous and subject to correction under section 25.25(c). We disagree with the appraisal districts and therefore reinstate the taxpayer's section 25.25(c) motions.

The Tax Code entitles a property owner aggrieved by actions of local tax-appraisal officials to protest those actions before the county's ARB. *See id.* § 41.41. Separately, the Code also entitles property owners to ask the ARB to correct certain errors in the "appraisal roll," which is what the statute calls the finalized appraisal records. *See id.* § 25.25(c).

2

Under either procedural avenue, taxpayers dissatisfied with the ARB's decision may seek judicial review. *Id*. § 42.01(a)(1)(A), (B).

This case asks what happens when a taxpayer loses a Chapter 41 protest and then later brings a section 25.25(c) motion raising essentially the same complaint. Under the usual rules for civil litigation, successive actions on a subject matter previously litigated by the parties are generally barred by the ancient rule of res judicata. *See Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). Administrative proceedings before an ARB are not civil litigation, of course. The parties disagree in this Court over whether an ARB's decision can ever have any res judicata effect at all, although that dispute was likely not preserved for this Court's review.

We need not resolve that dispute, however, because section 25.25(*l*) of the Tax Code eliminates any preclusive effect a prior Chapter 41 protest might otherwise be thought to have. It does so by authorizing taxpayers to bring section 25.25(c) motions "regardless of whether" they previously brought a Chapter 41 protest. In the words of section 25.25(*l*):

> A motion may be filed under Subsection (c) regardless of whether, for a tax year to which the motion relates, the owner of the property protested under Chapter 41 an action relating to the value of the property that is the subject of the motion.

TEX. TAX CODE § 25.25(*l*). As explained below, this provision guarantees the taxpayer's right to seek correction of the appraisal roll under section 25.25(c) whether or not—i.e., "regardless of whether"—there has already been a Chapter 41 protest.

3

The parties disagree over the extent to which this taxpayer's unsuccessful Chapter 41 protest concerned "an action relating to the value of the property." But as we read the statute, that question ultimately does not matter. The Tax Code authorizes the taxpayer to use section 25.25(c) "regardless of whether" there was a prior Chapter 41 protest of "an action relating to the value of the property." In other words, if there was such a protest, section 25.25(c) remains available. And if there was not such a protest, section 25.25(c) remains available.

The effect of section 25.25(*l*) is to make section 25.25(c)'s remedies available to taxpayers without regard to the existence or subject matter of prior Chapter 41 protests about the property. Because the court of appeals held otherwise and dismissed the taxpayer's section 25.25(c) claims based on res judicata, we reverse its judgments in these related cases and remand the cases for the court of appeals to consider arguments it did not reach.

## I.

J-W Power Company leases, sells, and services natural gas compressors used in oil and gas operations. It maintains these compressors in many counties across Texas, and it often leases them to customers in neighboring counties. This case involves the taxation of compressors maintained in Ector County that were leased to customers in Sterling and Irion Counties.[1]

---

[1] This opinion addresses two petitions consolidated for briefing and argument, one involving Sterling County (No. 22-0974) and one involving Irion County (No. 22-0975). J-W Power has filed several other petitions stemming from similar suits against other appraisal districts. *J-W Power Co. v. Frio Cnty. Appraisal Dist.*, No. 04-21-00564-CV, 2023 WL 3081772 (Tex. App.—San

Sections 23.1241 and 23.1242 of the Tax Code govern the appraisal of certain "heavy equipment" inventory, including J-W Power's compressors. *See id.* §§ 23.1241, .1242. Prior to 2012, these provisions did not apply to leased equipment. *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 574 (Tex. 2018). At that time, J-W Power's leased compressors were taxed in their county of destination, the place where they were being used by J-W Power's customers.

In 2011, the Legislature amended sections 23.1241 and 23.1242 such that leased heavy equipment would now be taxed in its county of origin, where the dealer stores it when not in use.[2] *Id.*; *see* TEX. TAX CODE §§ 23.1241(a), .1242. This Court's 2018 decision in *EXLP Leasing* clarified the meaning of these amendments and affirmed their constitutionality. 554 S.W.3d at 581–83. After the 2011 legislative amendments but before *EXLP Leasing*, the Sterling and Irion County Appraisal Districts continued to appraise J-W Power's leased compressors located within their jurisdiction, rather than deferring to the county of origin.

ARBs have various statutory functions, including the resolution of protests initiated by property owners. TEX. TAX CODE § 41.01(a). In

_____

Antonio Apr. 26, 2023, pet. filed); *J-W Power Co. v. Jack Cnty. Appraisal Dist.*, No. 02-22-00082-CV, 2023 WL 415517 (Tex. App.—Fort Worth Jan. 26, 2023, pet. filed); *J-W Power Co. v. Henderson Cnty. Appraisal Dist.*, No. 12-22-00325-CV, 2023 WL 4002733 (Tex. App.—Tyler June 14, 2023, pet. filed); *J-W Power Co. v. Wise Cnty. Appraisal Dist.*, No. 02-22-00227-CV, 2023 WL 2325507 (Tex. App.—Fort Worth Mar. 2, 2023, pet. filed).

[2] Act of May 21, 2011, 82d Leg., R.S., ch. 322, §§ 1–3, 2011 Tex. Gen. Laws 938, 938–41 (codified at TEX. TAX CODE §§ 23.1241, .1242).

the years between the 2011 Tax Code amendments and *EXLP Leasing*, J-W Power filed Chapter 41 protests with the Sterling County ARB for each year from 2013 to 2016. It did the same with the Irion County ARB for 2015 and 2016. J-W Power claimed that the 2011 amendments required its leased compressors to be taxed in their origin counties, rather than in Sterling and Irion Counties, their destination counties. The ARBs in both counties denied the protests. J-W Power did not seek judicial review.

In December 2018, after this Court decided *EXLP Leasing*, J-W Power filed motions to correct the appraisal rolls under section 25.25(c) of the Tax Code. It argued, based on the statutory amendments and *EXLP Leasing*, that the appraisal rolls included "property that does not exist in the form or at the location described in the appraisal roll," which, if true, would entitle J-W Power to a corrected appraisal roll. *Id.* § 25.25(c)(2), (3). The ARBs denied J-W Power's motions, and J-W Power responded with these lawsuits.

Both suits originated in the same district court, and throughout their history the lower courts have at times treated them as one consolidated matter, as do we. The appraisal districts moved for summary judgment, arguing among other things that res judicata barred the section 25.25(c) motions because those motions involved the same subject matter as the prior Chapter 41 protests. The districts also argued that J-W Power failed to exhaust its administrative remedies because it did not seek judicial review of the ARB orders denying its Chapter 41 protests. The district court granted summary judgment to the districts without explanation.

6

The court of appeals affirmed. It held that res judicata barred J-W Power's section 25.25(c) motions, which raised "nearly verbatim" claims as compared to its prior Chapter 41 protests. 684 S.W.3d 480, 486–88 (Tex. App.—Austin 2022); 684 S.W.3d 488, 494–96 (Tex. App.—Austin 2022). J-W Power argued that section 25.25(*l*) overcame any res judicata effect its Chapter 41 protest may have had, but the court of appeals concluded that section 25.25(*l*) did not apply because J-W Power's Chapter 41 protests concerned the improper *categorization* of its compressors, not their *value*. 684 S.W.3d at 486–87; 684 S.W.3d at 495.

## II.

This case involves two separate statutory schemes authorizing property owners to seek changes to an appraisal district's treatment of their properties: section 41.41 protests and section 25.25(c) motions. Generally, the property owner must lodge a section 41.41 protest no later than 30 days after receiving notice of the appraised value, or before May 15, whichever is later. TEX. TAX CODE § 41.44(a)(1). The Code lists several specific grounds for a section 41.41 protest, plus a catch-all provision.

> A property owner is entitled to protest before the appraisal review board the following actions:
> (1) determination of the appraised value of the owner's property or, in the case of land appraised as provided by Subchapter C, D, E, or H, Chapter 23, determination of its appraised or market value;
> (2) unequal appraisal of the owner's property;
> (3) inclusion of the owner's property on the appraisal records;
> (4) denial to the property owner in whole or in part of a partial exemption;
> (4-a) determination that the owner's property does

not qualify for the circuit breaker limitation on appraised value provided by Section 23.231;

(5) determination that the owner's land does not qualify for appraisal as provided by Subchapter C, D, E, or H, Chapter 23;

(6) identification of the taxing units in which the owner's property is taxable in the case of the appraisal district's appraisal roll;

(7) determination that the property owner is the owner of property;

(8) a determination that a change in use of land appraised under Subchapter C, D, E, or H, Chapter 23, has occurred; or

(9) any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner.

*Id.* § 41.41(a). Once a protest is filed, the property owner is entitled to a hearing before the ARB. *Id.* § 41.45(a). The ARB must issue a written order deciding the protest. *Id.* § 41.47(a). An unsatisfied property owner may seek judicial review in district court. *Id.* § 42.01(a)(1)(A).

Section 25.25(c) is another avenue, albeit more limited, by which a property owner can seek changes to an appraisal district's treatment of his property. "By May 15 or as soon thereafter as practicable," the chief appraiser must prepare and submit a completed appraisal record to the ARB for review. *Id.* §§ 25.01, .22. After the ARB has resolved pending protests and approved the appraisal records, the records "constitute the appraisal roll for the district." *Id.* §§ 25.24, 41.12. Section 25.25(c) allows a property owner to ask the ARB to "correct" the appraisal roll for "any of the five preceding years." *Id.* § 25.25(c). The grounds for a section 25.25(c) motion are as follows:

(1) clerical errors that affect a property owner's liability for a tax imposed in that tax year;

8

(2) multiple appraisals of a property in that tax year;

(3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll; or

(4) an error in which property is shown as owned by a person who did not own the property on January 1 of that tax year.

*Id.* § 25.25(c). As with Chapter 41 protests, "[a] property owner is entitled to appeal [to a district court] an order of the appraisal review board determining a motion filed under Section 25.25." *Id.* § 42.01(a)(1)(B).

**III.**

The question presented is whether res judicata bars J-W Power's section 25.25(c) motions because those motions raise essentially the same complaints as J-W Power's prior, unsuccessful Chapter 41 protests. The answer is no.

J-W Power submitted its section 25.25(c) motions using forms provided by the appraisal districts. On those forms, J-W Power checked boxes indicating that its motions raised the grounds listed in section 25.25(c)(2) ("multiple appraisals") and section 25.25(c)(3) ("inclusion of property that does not exist in the form or at the location described"). *See id.* § 25.25(c)(2), (3). In its Chapter 41 protests filed over several years, J-W Power named multiple grounds for its protests: "Property should not be taxed in this appraisal district," "Should be assessed as Heavy Equipment Inventory," "Value is over market value," etc. We will assume for purposes of this opinion that the section 25.25(c) motions and the earlier Chapter 41 protests raise essentially the same legal and factual issues.

9

The court of appeals held that res judicata barred J-W Power's section 25.25(c) motions. 684 S.W.3d at 486–88; 684 S.W.3d at 494–96. Res judicata, or claim preclusion, "bars lawsuits that arise out of the same subject matter as a prior suit when, with the use of diligence, that subject matter could have been litigated in the prior suit." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). This venerable rule promotes judicial economy and helps maintain the stability and reliability of judgments. *Id.* In general, res judicata applies when there is: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

As an initial matter, amicus curiae Texas Taxpayers and Research Association contends that the outcome of an ARB proceeding can never have res judicata effect because, among other reasons, the outcome does not yield a "final judgment on the merits by a court of competent jurisdiction." *See id.* J-W Power adopts this argument in its reply brief in this Court. It did not make this argument in the lower courts, however. To the contrary, it specifically disclaimed the argument in the court of appeals. We need not resolve the question, which we consider an open one, because we agree with J-W Power's argument that section 25.25(*l*) of the Tax Code preserved its right to file a section 25.25(c) motion notwithstanding its prior Chapter 41 protests. J-W Power advanced its view of section 25.25(*l*) consistently in the lower

10

courts. Unlike the broader question of whether res judicata can ever attach to ARB proceedings, there is no doubt that the narrower question of section 25.25(*l*)'s meaning has been properly preserved for our review.

Apart from the section 25.25(*l*) question, the parties also disagree over whether the third element of res judicata is satisfied here. The appraisal districts maintain that J-W Power's section 25.25(c) motions were based on the same claims raised by its earlier, unsuccessful Chapter 41 protests. J-W Power responds that its Chapter 41 protests and section 25.25(c) motions address separate injuries and that the section 25.25(c) motions could not have been brought at the time of its Chapter 41 protests because appraisal rolls only come into existence after the protests have been heard.

We will assume, without deciding, that res judicata would otherwise bar J-W Power's section 25.25(c) motions because they seek to relitigate subjects covered by its Chapter 41 protests. We therefore confront J-W Power's argument that section 25.25(*l*) prevents the application of res judicata to its section 25.25(c) motions. We agree with J-W Power on this point, for the following reasons.

Section 25.25(*l*) provides:

> A motion may be filed under Subsection (c) regardless of whether, for a tax year to which the motion relates, the owner of the property protested under Chapter 41 an action relating to the value of the property that is the subject of the motion.

TEX. TAX CODE § 25.25(*l*). The parties agree that this provision guarantees a property owner's right to file a section 25.25(c) motion in *some* instances where a prior Chapter 41 protest might be seen as a roadblock. The dispute is over the breadth of subsection (*l*)'s protection

for later section 25.25(c) motions.

In debating the breadth of section 25.25(*l*), the parties emphasize the second half of the provision, particularly the words "relating to the value of the property." Understandably so, as the court of appeals hinged its decision on that portion of the statute. *See* 684 S.W.3d at 486–87; 684 S.W.3d at 495. J-W Power maintains that its Chapter 41 protests "relat[ed] to the value of the property." Some of its protests directly contested the property's value, it contends. Others, while they challenge the taxable situs of the property rather than the calculation of its value, at the very least "relat[e] to the value" because they affect the taxable value assigned to J-W Power. *See, e.g.*, *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (interpreting "related to" in the TCPA context as not requiring more than a "tangential relationship").

According to the appraisal districts, only Chapter 41 protests contesting the calculation of the property's appraised value "relat[e] to the value of the property." Section 25.25(*l*) has no application at all, the appraisal districts argue, unless the Chapter 41 protest at issue "relat[ed] to the value of the property" in this way. Under this view, section 25.25(*l*) means that if a prior Chapter 41 protest challenged an action "relat[ed] to the value of the property," then a section 25.25(c) motion raising the same complaint is not barred. But if a prior Chapter 41 protest was not "relat[ed] to the value of the property," then that protest *does* operate as a bar to a later section 25.25(c) motion raising essentially the same complaint. The court of appeals adopted this view, under which J-W Power's section 25.25(c) motions challenging

12

taxable situs in Sterling and Irion Counties are barred by prior, unsuccessful Chapter 41 protests raising the same complaint, which does not "relat[e] to the value of the property." *See* 684 S.W.3d at 486–87; 684 S.W.3d at 495.

The consequence of the position taken by the appraisal districts and the court of appeals is that the viability of J-W Power's section 25.25(c) motions comes down to whether its earlier Chapter 41 protests "relat[ed] to the value of the property." But in our view, that is exactly what subsection (*l*) prohibits. Subsection (*l*) instructs that "[a] motion may be filed under Subsection (c) *regardless of whether . . .* the owner of the property protested under Chapter 41 an action relating to the value of the property." TEX. TAX CODE § 25.25(*l*) (emphasis added).

"Regardless of" commonly means "without taking into account."[3] We see no indication in the statute that "regardless of whether" should not be given its natural meaning, which is both capacious and categorical. The Legislature has instructed that a section 25.25(c) motion may be filed "regardless of whether"—i.e., *without taking into account whether*—the owner previously filed a Chapter 41 protest "relat[ed] to the value of the property." The appraisal districts' understanding of section 25.25(*l*) cannot be right because it requires us to take into account—indeed, to place dispositive weight upon—whether

---

[3] *See Regardless of*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/regardless%20of (last visited May 31, 2024). The Cambridge Dictionary similarly defines "regardless of" as "without being influenced by any other events or conditions." *Regardless of*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/regardless-of (last visited May 31, 2024).

or not J-W Power's prior Chapter 41 protests "relat[ed] to the value of the property." This we cannot do while also obeying section 25.25(*l*).

As we read subsection (*l*), if the taxpayer's earlier Chapter 41 protest related to the value of the property, it can still bring a section 25.25(c) motion. And likewise, if the taxpayer's earlier Chapter 41 protest did not relate to the value of the property, it can still bring a section 25.25(c) motion. Or, if the taxpayer filed no Chapter 41 protest at all—once again—it can still bring a section 25.25(c) motion. By guaranteeing a property owner's ability to file a section 25.25(c) motion "regardless of whether" there was also a Chapter 41 protest relating to the property's value, the statute prohibits any consideration of the existence or contents of a prior Chapter 41 protest when a property owner's ability to make use of section 25.25(c) is called into question.

The appraisal districts worry that adopting our interpretation of section 25.25(*l*) will give rise to duplicative and wasteful litigation. Of course, we "respect policy-laden statutes as written and give wide leeway to the innumerable trade-offs reflected therein." *Miles v. Tex. Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 628–29 (Tex. 2022) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 462 (Tex. 2009)). We note also the unusual posture of this case, in which the law—or at least many people's understanding of the law in light of *EXLP Leasing*—underwent a change between J-W Power's unsuccessful Chapter 41 protests and its pending section 25.25(c) motions. The motions at issue here are not a vexatious effort to relitigate old issues. They are instead a colorable attempt to bring the appraisal districts into

compliance with the law, as amended by the Legislature in 2011 and interpreted by this Court in 2018.

The appraisal districts nevertheless express concern that an expansive interpretation of section 25.25(*l*) will enable wasteful litigation in future cases. Yet in most instances, parties will have little reason to suspect that a later section 25.25(c) motion will yield a better outcome than a previous, unsuccessful Chapter 41 protest. Absent a change in the law, a party that has definitively lost a Chapter 41 protest will normally have scant reason to spend its time and money relitigating the same issue using a section 25.25(c) motion. The ARB, and in some cases the district court, will have already determined the issue, and there will normally be no reason to think the outcome will change the second time around.

Nevertheless, in cases where a demand for correction of the appraisal rolls remains viable despite a prior, unsuccessful Chapter 41 protest on the same topic, the Legislature has expressed its preference that section 25.25(c) remain available to taxpayers. Section 25.25(c) is not without its own limits, of course. It contains a five-year statute of limitations, and it applies only to certain kinds of corrections to the appraisal rolls. TEX. TAX CODE § 25.25(c). But for situations to which section 25.25(c) applies, the Legislature has, by enacting section 25.25(*l*), given greater priority to the taxpayers' interest in accurate appraisal records than to the appraisal district's interest in avoiding potentially duplicative proceedings. We see nothing surprising about the Legislature's decision to strike the balance in this way, but even if we did, our job would be to apply the statute as written.

**IV.**

In deciding that J-W Power's section 25.25(c) motions may proceed, we express no view of their ultimate merits. The appraisal districts raised several other arguments in their motions for summary judgment. The court of appeals affirmed the grants of summary judgment solely on res judicata grounds. We therefore reverse its judgments and remand the cases to the court of appeals for further proceedings consistent with this opinion.

James D. Blacklock
Justice

**OPINION DELIVERED:** June 7, 2024