Opinion filed April 18, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00206-CV

_____

## SOLARIS OILFIELD SITE SERVICES OPER LLC, Appellant

## V.

## BROWN COUNTY APPRAISAL DISTRICT, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV2009372**

### O P I N I O N

This ad valorem tax case presents an issue of first impression: how a fleet of mobile sand silo systems should be classified for taxation purposes. The trial court rendered a summary judgment in favor of Appellee, Brown County Appraisal District, determining that the silo systems do not qualify for Dealer's Heavy Equipment Inventory (DHEI) appraisal and that they are not entitled to receive DHEI appraisal for tax years 2020 and 2021. *See* TEX. TAX CODE ANN. § 23.1241(a)(6)

(West 2021). The trial court denied Appellant's motion for summary judgment. On appeal, Appellant, Solaris Oilfield Site Services Oper LLC (Solaris), maintains that the silo systems should instead be classified as "heavy equipment" subject to valuation under Sections 23.1241 and 23.1242, rather than the general appraisal statute for personal property. *See id.* §§ 23.01, 23.1241, 23.1242. We reverse and render.

## The Silo Systems

The silo systems in question, which are used to deliver sand at hydraulic fracturing (fracing)[1] sites, are owned by Solaris and rented to companies in the oil and gas business. The sand is delivered separately to the drilling location and the silos are filled. The sand from the silos is then used as a proppant[2] to hold open—or "prop" open—fissures and perforations in rock formations that have been subjected to the fracturing process, facilitating the release and flow of natural gas, oil, and natural gas liquids. Each silo system includes six sand silos. Underneath the silos the sand is released onto a system of conveyer belts powered by generators that deliver the sand to the customer's sand hopper for mixing.

Due to their size, the sand silos are transported to a customer site on separate transport trailers. According to Kelly Price, who testified in a deposition as a corporate representative of Solaris, "the silo can't go anywhere without the trailer

---

[1]"Fracing" pumps "fluid down a well at high pressure so that it is forced out into the formation. The pressure creates cracks in the rock that propagate along the azimuth of natural fault lines in an elongated elliptical pattern in opposite directions from the well." *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 6 (Tex. 2008).

[2]"Behind the [pumping] fluid comes a slurry containing small granules called *proppants*—sand, ceramic beads, or bauxite are used—that lodge themselves in the cracks, propping them open against the enormous subsurface pressure that would force them shut as soon as the fluid was gone." *Id.* at 6–7 (emphasis added). Once drained, cracks are open for gas or oil to flow to the wellbore. *Id.* "Fracing in effect increases the well's exposure to the formation, allowing greater production. First used commercially in 1949, fracing is now essential to economic production of oil and gas and commonly used throughout Texas, the United States, and the world." *Id.*

and the trailer can't haul anything but the silo." In addition to the transport trailers, two large base trailers are used to move the air compressors and generators that are used in the system. After the equipment arrives at the customer site, the base trailers are lowered to ground level. A hydraulic lift then sets the silos upright onto the base trailers. After the silos are in place, the system is interconnected and put into service. In the meantime, the transport trailers leave the site after delivering the silos.

Solaris maintains that it does not rent out individual components of the system, including the transport trailers, and that it only rents the silo system itself.

Solaris did not build a transport trailer for every single silo. Instead, Price testified that there were approximately six transport trailers for every two to three fleets, and that transport trailers leaving a customer site would go to a staging pad or move another fleet.

*"Heavy Equipment" Under Section § 23.1241 of the Tax Code and the Actions of the Parties*

In 2012, the Texas legislature[3] added leased or rented heavy equipment to a statutory formula used to appraise the value of "heavy equipment." Act of May 21, 2011, 82d Leg., R.S., ch. 322, 2011 Tex. Gen. Laws 938, 938–41. State law now requires that appraisal based on the lease revenue of the heavy equipment generated during the previous tax year be divided by twelve, which could reduce a property owner's tax liability. *See* TAX § 23.1241(a)(9)(B), (b). "Heavy equipment" does

---

[3]The Texas constitution assigns to the legislature the task of determining "value," providing that it "shall be ascertained as may be provided by law." *See* TEX. CONST. art. VIII, § 1(b); *EXLP Leasing, LLC v. Galveston Central Appraisal Dist.*, 554 S.W.3d 572, 576 (Tex. 2018). "[T]he fixing of a standard of valuation" is "purely of the exercise of discretion and judgment on the part of the Legislature." *Republic Ins. Co. v. Highland Park Indep. Sch. Dist.*, 102 S.W.2d 184, 193 (Tex. 1937). The legislature is "free to adopt the mode of ascertaining the value of any class of property by such method as it might deem best." *EXLP Leasing*, 554 S.W.3d at 576 (quoting *Mo., K. & T. Ry. Co. of Tex. v. Shannon*, 100 S.W. 138, 144 (Tex. 1907)).

not include a motor vehicle that is required by the Texas Transportation Code to be titled or registered. *Id.* § 23.1241(a)(6).

In 2020, the appraisal district issued a notice of value regarding the silo systems that subjected them to taxation as business personal property, which, except as otherwise provided by Chapter 23 of the Tax Code, is governed by the general appraisal statute and is taxed at its market value. *See* TAX. 23.01(a). Solaris then filed a protest with the Brown County Appraisal Review Board. The protest was denied. Thereafter, Solaris filed a tax protest suit in the district court claiming that the silo systems were heavy equipment. After the parties conducted discovery, they filed competing motions for summary judgment. In its motion, the appraisal district argued that, because Solaris's equipment must be titled and registered as motor vehicles under Chapter 501 and 502 of the Transportation Code, the silo systems were specifically excluded from the definition of "heavy equipment" and were therefore excluded from the "special treatment" given to DHEI by the Tax Code. Following a hearing, the district court issued an order granting the appraisal district's motion for summary judgment and denying Solaris's motion.

In its sole issue, Solaris asserts that the trial court erred in rendering summary judgment in favor of the appraisal district because the silo systems "indisputably meet[s]" the definition of "heavy equipment" in Section 23.1241(a)(6).

*Competing Motions for Summary Judgment: Motor Vehicles or Heavy Equipment?*

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(a), (c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865

(Tex. 2018). When a movant meets its summary judgment burden, the burden shifts to the nonmovant to raise a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC,* 437 S.W.3d 507, 510–11 (Tex. 2014). In determining whether a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). We must credit evidence favorable to the nonmovant if reasonable jurors could do so, and we will disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A genuine issue of material fact is raised if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When parties move for summary judgment on both traditional and no-evidence grounds, we generally consider the no-evidence motion first. *KMS Retail,* 593 S.W.3d at 181. If the non-movant fails to overcome its no-evidence burden on any claim, the traditional motion, to the extent that it addresses the same claim, need not be addressed. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "To defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements." *KMS Retail*, 593 S.W.3d at 181; *see* TEX. R. CIV. P. 166a(i). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

When cross-motions for summary judgment are filed, each party bears the burden to establish that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). Thus, when the trial court grants one motion and denies the other, we must consider all of the summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Lightning Oil Co.*, 520 S.W.3d at 45 (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). Solaris does not argue on appeal that summary judgment was improper because genuine issues of material fact exist. Rather, it argues that the silo systems are "heavy equipment" as a matter of law. The appraisal district urges the contrary. Each party insists that its respective construction of Section 23.1241(a)(6) is the correct one.

### The Arguments of the Parties

Under the Tax Code, "heavy equipment" is defined as "self-propelled, self-powered, or pull-type equipment, including farm equipment or a diesel engine, that weighs at least 1,500 pounds and is intended to be used for agricultural, construction, industrial, maritime, mining, or forestry uses." TAX § 23.1241(a)(6). However, "heavy equipment" specifically excludes a "motor vehicle" that is required to be titled under Chapter 501 or required to be registered under Chapter 502 of the Transportation Code. *Id.*

Solaris argues that, when fully assembled and operating, the silo system is heavy equipment, since it weighs more than 1,500 pounds, is self-powered, and is intended to be used in a mining process. Likewise, although it concedes that the trailers that are used to haul and support the system should be taxed as motor vehicles, Solaris points out that the fully assembled system otherwise bears no resemblance to a "trailer" or any other type of motor vehicle.

6

The appraisal district maintains that, when viewed as an integrated unit, the silo systems meet the definition of "motor vehicle" under the Transportation Code, and that they are therefore excluded from the definition of heavy equipment. This argument effectively merges the silo system "load" carried with the "trailer" to contend that the system constitutes a "motor vehicle."

Since its enactment, multiple appraisal districts have contested the application of Section 23.1241(a)(6) regarding valuing a dealer's heavy equipment inventory. Here, the appraisal district relies[4] on the statute's exception for motor vehicles. *Id.* The appraisal district contends that the silo systems are not "heavy equipment" under the statute because the specialized transports utilized by Solaris are required to be titled or registered as motor vehicles under Chapter 501 or 502 of the Transportation Code. The appraisal district further argues that categorizing the silo systems as heavy equipment would "frustrate" the legislature's intent. The appraisal district reasons that, because the systems include tires and license plates, and because the systems must comply with regulatory weight and width restrictions during transport, the systems must qualify as a "trailer" and/or "semitrailer" under the Transportation Code. We are not persuaded by this argument.

*Determining Legislative Intent*

"[I]t is the legislature's province to set valuation for tax purposes so long as it does not act unreasonably, arbitrarily, or capriciously." *Ward Cnty. Appraisal Dist. v. EES Leasing LLC*, 563 S.W.3d 203, 204 (Tex. 2018) (citing *EXLP*, 554 S.W.3d at 576–81). In construing statutory terms—a question of law subject to de novo review—our primary objective is to determine and give effect to the legislature's intent. *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 n.23

---

[4]Other than *EES Leasing LLC*, the parties provide no relevant authority (other than the statute) that utilizes Section 23.1241(a)(6)(A) or (B) of the Tax Code in the exclusion of what is claimed to be heavy equipment.

(Tex. 2012). We derive legislative intent from the statute as a whole rather than from isolated portions of it. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). That is, we read statutes contextually to give effect to every word, clause, and sentence because every word and phrase is presumed to have been used intentionally, with a meaning and a purpose. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011 (West 2013); *Cadena Commercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017).

"If the statute is clear and unambiguous, we must read the language according to its common meaning 'without resort to rules of construction or extrinsic aids.'" *Crosstex Energy Services, L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014) (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). And if a statute is unambiguous, we adopt the interpretation that is supported by the statute's plain language unless such an interpretation would yield an absurd result. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (citing *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 177 (Tex. 2004)). "A statute is ambiguous if its words are susceptible to two or more reasonable interpretations, and we cannot discern legislative intent from the language alone." *Fort Worth Transp. Auth.*, 547 S.W.3d at 838; *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016).

Normally, when the meaning of a statute is ambiguous, we consider factors such as the legislative history and intent, the common law, former statutory provisions, and the consequences of any constructions under consideration. GOV'T § 311.023; *see also In re K.L.V.*, 109 S.W.3d 61, 64–65 (Tex. App.—Fort Worth 2003, pet. denied) (enumerating various factors relating to the interpretation of

ambiguous statutes). Likewise, we seek to avoid interpretations that lead to foolish or absurd results. *McKinney v. Blankenship*, 282 S.W.2d 691, 698 (Tex. 1955). Generally speaking, statutes should be liberally construed to achieve their purposes and promote justice. GOV'T § 312.006; *see Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 58 (Tex. 2019).

*The Meaning of "Motor Vehicle" and "Trailer"*

The parties agree that, given their design, the only possible function of the transport trailers is to move the silos from one site to another.[5] The appraisal district argues that, because the silo systems are required to comply with regulatory restrictions on weight and width during transport, the systems must qualify as a "trailer" and/or "semitrailer" under the Transportation Code. However, the Transportation Code indicates that, to qualify as a trailer, a vehicle must be "designed or used to carry a *load*." TEX. TRANSP. CODE ANN. § 501.002(29) (West 2022) (emphasis added). A semitrailer is likewise used with a motor vehicle "so that part of the weight of the vehicle *and its load* rests on or is carried by another vehicle." TRANSP. § 501.002(23) (emphasis added).

Section 501.002 of the Transportation Code does not define "load." However, the term "load" is commonly understood as being separate from the trailer itself including, among other things, "whatever is put in a . . . vehicle . . . for conveyance." *Discover Prop. & Cas. Ins. Co. v. Blair*, No. EDCV 13-00290-VAP, 2014 WL 4412339, at *9 (C.D. Cal. Aug. 26, 2014) (quoting MERRIAM–WEBSTER COLLEGIATE DICTIONARY 682 (10th ed.1997)); *see State v. $1,760.00 in U.S.*

---

[5]We conclude that the fact that the transport trailers or base trailers for the silo systems are uniquely designed to only transport silos may not be determinative. While not perfectly analogous, a car carrier trailer, also known as an auto transport trailer, is uniquely designed and built to carry to market and elsewhere only motor vehicles. Because it is uniquely designed and only carries a single type of load, that fact alone, would not allow us to conclude that the motor vehicles transported by it become part of and are properly taxed with the car carrier trailer.

*Currency*, 406 S.W.3d 177, 180 (Tex. 2013) ("Undefined terms in a statute are typically given their ordinary meaning."). If the silos themselves are treated as a part of the vehicle, as the appraisal district proposes, then there could never be a "load" for transport trailers to convey. In a similar way, when the system is in transport, the only possible "load" that the base trailers can haul are the other parts of the silo system.

Additionally, the transport trailers are not always attached to the same silos. That is, at any given time, a transport trailer might be hauling any one of a multitude of silos that are a part of the Solaris fleet. This interchangeability suggests that the silos are never part of any particular silo system; therefore, it is difficult to conceive of the transport trailers themselves as being an integrated part of a larger unit, including the single sand silo/"motor vehicle" unit that the appraisal district proposes.

The appraisal district's argument that the sand silo system is not and cannot be taxed as heavy equipment is dependent upon the special appraisal provisions set out in the Texas Tax Code, specifically Section 23.1241(a)(6), which provides:

> "Heavy equipment" means self-propelled, self-powered, or pull-type equipment, including farm equipment or a diesel engine, that weighs at least 1,500 pounds and is intended to be used for agricultural, construction, industrial, maritime, mining, or forestry uses. *The term does not include a motor vehicle that is required by:*
>
> *(A) Chapter 501, Transportation Code, to be titled; or*
>
> *(B) Chapter 502, Transportation Code, to be registered.*

TAX § 23.1241(a)(6) (emphasis added).

Because the trailers that are included with the sand silo system must be titled or registered, and some are used as platforms on fracing locations, the appraisal district contends that the silo system cannot be "heavy equipment" under Section 23.1241(a)(6). The Tax Code does not define "motor vehicle" for purposes

10

of that title, nor does Section 23.1241 define the term for purposes of the special appraisal provisions in that section.[6] *See* TAX §§ 1.04, 23.1241. Therefore, and because the statute excepts "motor vehicles" required to be titled under Chapter 501 or registered under Chapter 502 from the special appraisal provisions, we examine the relevant definitions under Section 501.002 and 502.001 of the Transportation Code to determine the whether the silo systems at issue fall within the exception. Section 501.002 defines, in relevant part, a "motor vehicle" as "any motor driven or propelled vehicle required to be registered under the laws of this state" or "a trailer or semitrailer, other than manufactured housing, that has a gross vehicle weight that exceeds 4,000 pounds." TRANSP. § 501.002(17). Section 502.001 defines a "motor vehicle" as "a vehicle that is self-propelled." *Id.* § 502.001(25). Both sections define "semitrailer" and "trailer" as follows:

> "Semitrailer" means a vehicle that is designed or used with a motor vehicle so that part of the weight of the vehicle and its load rests on or is carried by another vehicle.
>
> . . . .
>
> "Trailer" means a vehicle that:
>
> (A) is designed or used to carry a load wholly on the trailer's own structure; and
>
> (B) is drawn or designed to be drawn by a motor vehicle.

*Id.* § 501.002(23), (29); § 502.001(39), (42). The appraisal district contends that the silo systems meet the definition of a "motor vehicle'" because the systems "[e]xceed[] 4,000 pounds . . . [are] drawn or designed to be drawn by a motor vehicle . . . [and] [a]re used to carry a load wholly on its own structure." *See id.* § 501.002(17)(B), (29).

---

[6]We note that Section 23.121, another special appraisal statute, defines "motor vehicle" for purposes of that specific section. *See* TAX § 23.121(a)(8).

While the definitions of trailer and semitrailer discuss a load resting on or carried by the trailer or semitrailer, the definitions do not generally include the load carried, regardless of how they are later implemented, to *deem* that equipment as a motor vehicle. While "motor vehicle" includes a "trailer," nowhere in these provisions of the Transportation Code is the *load carried* defined as a trailer or a motor vehicle; rather, it is defined that the trailer or semitrailer are *designed to carry* a load or have a load resting upon them. And unlike a trailer, a carried load is not required to be licensed or registered under any provision cited by the appraisal district, including Chapters 501 or 502 of the Transportation Code. The exclusion for motor vehicles in Section 23.1241(a)(6) is limited to those required to be titled by Chapter 501 or registered by Chapter 502 of the Transportation Code. *See* TAX § 23.1241(a)(6). Accordingly, under a plain reading of the Tax Code's definition of "heavy equipment," while Solaris's *trailers* may be required to be titled or registered by Chapters 501 and 502 and therefore may be excluded from qualifying as heavy equipment, the loads carried by those trailers, are not.

*Can the Sand Silo System Components be Separately Appraised?*

The appraisal district argues that if taxpayers such as Solaris are allowed to break down their equipment into component parts for taxation purposes, no equipment could ever qualify as a "motor vehicle." To illustrate, the appraisal district points to the Dealer's Motor Vehicle Inventory statute. *See* TAX § 23.121. The appraisal district argues that, if equipment can be broken down into component parts, as Solaris asserts, a dealer could say that any given component, such as a car radio, is not a vehicle because it has no wheels and does not serve the function of transporting people or property. *See id*. § 23.121(a)(8).

We do not believe that the silo systems are always "integrated units" in the same way as a car or a truck. Unlike a car or a truck, which is designed to function

12

as a single unit at all times, the silo systems are designed to be broken down into separate units for purposes of transport from one site to another. Additionally, unlike automobiles, the silo systems use interchangeable "parts" that comprise transport trailers and silos, as we have described above. Furthermore, the components of the system serve distinctive functions during transportation, only some of which can fairly be described as a "motor vehicle" or "trailer." Their principal function appears to be to provide silos that hold large volumes of sand on a well site of possibly remote locations, ultimately with the goal of consistent delivery of proppant to a wellbore during a fracing operation. As such, we are not persuaded by the appraisal district's hypothetical based on cars and trucks.

The appraisal district also argues that Solaris should not be allowed to treat the silo systems both as "integrated" for one purpose and as component parts for another purpose. In support of this argument, it points out that if the silo systems are viewed by their individual components, they are no longer "self-powered" and therefore cannot qualify as heavy equipment.

In making this argument, the appraisal district infers that it is somehow improper for the silo systems to be treated as "integrated systems" for one purpose and as "components" for other purposes. Having been provided no authority to the contrary, we conclude that nothing prohibits the recognition of the silo system as a "vehicle" (and, at least in some cases, "load") for transportation purposes, and as "heavy equipment" when it is integrated and fully deployed.

Solaris asks that the silo systems themselves—the integrated "Packages" that it rents to customers—be put in one account and taxed per Section 23.1241, while the transport trailers, and the base trailers which undisputedly support the silo systems, but are not part of them, be put in a separate account. The appraisal district insists, however, that a silo system must "include[] the base trailer" because the base

13

trailer transports the silo system's generator, without which, the silo system is not "self-powered."  Solaris maintained that the trailer base is "pull-type equipment,"[7] but when integrated it is self-powered as referenced in 23.1241(a)(6).  In *EES Leasing LLC*, the appraisal district contended that the compressors at issue were not heavy equipment because they were not "self-powered."  563 S.W.3d at 206.  The supreme court rejected that argument and held that the compressors that were used to deliver natural gas into pipelines were "self-powered," despite lacking an internal fuel source.  *Id.*  Solaris's corporate representative described not only the generator that "powers everything" on a silo system, but also described the mechanism by which the generator was integrated into the silo system.  The generator sits on top of a fuel tank, the generator generates electricity, and the generator powers the

---

[7]There is no definition given of the term used by the legislature for "pull-type equipment."  "When the legislature has failed to define a word or term, courts will apply its ordinary meaning."  *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 502 (Tex. App.—Fort Worth 2001, pet. denied) (citing *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992); *Hopkins v. Spring Indep. School Dist.*, 736 S.W.2d 617, 619 (Tex. 1987)).  When applying the ordinary meaning, courts "may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning, and implications from any statutory passage or word are *forbidden* when the legislative intent may be gathered from a reasonable interpretation of the statute *as it is written*."  *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 138 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *see Monsanto Co. v. Cornerstones Mun. Utility Dist.*, 865 S.W.2d 937, 939 (Tex. 1993) *Commonwealth of Mass. v. United N. & S. Dev. Co.*, 168 S.W.2d 226, 229 (Tex. 1942).  The court of appeals, in *Valerus Compression Servs. v. Gregg Cnty. Appraisial Dist.*, noted that "the equipment [compressors] can be pulled to move it to the place it needs to be in order to do its job.  457 S.W.3d 520, 529–30 (Tex. App.—Tyler 2015, no pet.).  However, the equipment does not operate while being pulled.  *Id.*  It held:

> However, "pull-type" equipment may not convert fuel to energy, but it is through the pulling process that the work is done.  For instance, agricultural equipment pulled behind a tractor constitutes "pull-type" equipment.  If pulling the equipment onto a truck for transport was enough to qualify as "pull-type" equipment, then logically the categories would be based on how the equipment was placed on a truck, in which case there would also be a category for "lifted-by-crane-type."  Because the legislature did not create categories based on how the equipment was placed on a truck for transport, we conclude that the legislature intended the phrase "pull-type" equipment to refer to equipment that performs its job while being pulled.

*Valerus Compression Servs.*, 457 S.W.3d at 530 (internal citations omitted); *see Monsanto Co.*, 865 S.W.2d at 939.  Accordingly, the base trailer may be "pull-type" equipment, but under Section 23.1241(a)(6) of the Tax Code it is to be titled or registered under Chapters 501 and 502 of the Transportation Code and as such it would not, operating only as a trailer, qualify as "heavy equipment."

compressors as well as all other equipment. Declining to restrict "self-powered" to equipment with an "internal" engine, the supreme court instead read "self-powered" to include "any piece of heavy equipment that relies on an integrated combustion engine." *EES Leasing*, 563 S.W.3d at 206. Because Solaris's silo systems indisputably rely on an integrated engine, the generator, they are therefore self-powered.

The appraisal district compares the silo system to Optimus Prime, a fictional character in the Transformers media franchise. As both toy and character, Optimus Prime can change its form from truck to robot and back again. *See* Hasbro, https://shop.hasbro.com/en-us/product/transformers-authentics-optimus-prime/76BBF8C9-B864-42B5-A951-135AD7348EB1 (last visited April 17, 2024). This comparison may be appropriate. As is the toy, the silo system is unique, innovative, and multifunctional. *See id.* However, we believe it only serves to strengthen Solaris's argument that the silo system can reasonably be seen both as a non-vehicle in some forms and as part-vehicle in other forms.

While unique, we note that the silo systems are not the only examples of property that, while resembling a motor vehicle in some respects, also serve other functions. For example, a manufactured and/or mobile home could be viewed as a motor vehicle/trailer while in transport and as a domicile when it is established in a fixed location. The Transportation Code explicitly contemplates this scenario, by indicating that manufactured housing and mobile homes are not "motor vehicles." *See* TRANSP. § 501.002(17)(B); TEX. OCC. CODE ANN. § 1201.003(18), (20) (West 2019). We observe that a mobile home's primary function is that of a home. *See* OCC. § 1201.003(20)(A)(iii). Conversely, a travel trailer, which also serves multiple functions, is unambiguously classified as a motor vehicle. TRANSP. § 501.002(17)(C). But we observe that the intended primary function of a travel

15

trailer is for recreation or travel, not for use as a permanent dwelling. *See id.* § 501.002(30)(B)(ii), (iii). In both of these situations, the legislature has rendered a clarification that helps to avoid any ambiguity on the question of whether the property at issue qualifies as a motor vehicle. While no such legislative guidance has been provided as to silo systems, we conclude that, as integrated, silo systems do not primarily function as motor vehicles.

It is unlikely that the legislature was contemplating the silo system, or a similar concept, when it implemented the tax provisions that are at issue in this case. It is therefore not surprising that our statutory taxation scheme does not address the issue before us in terms that are as explicit as they are for manufactured homes and travel trailers. That said, however, the statutory scheme is silent on the question of whether the legislature intended that a silo system be classified in its assembled entirety as a motor vehicle. Accordingly, we conclude, as Solaris has maintained, that there is no statutory impediment preventing the silo system from reasonably being classified based on its component parts for transportation functions and as an integrated system for operational functions.

This tax provision language as applied to the facts of this case yields only "one reasonable interpretation." *Sw. Royalties*, 500 S.W.3d at 405. The statutory taxation scheme before us does not forbid the trailers that are used to haul and support the silo system equipment from being taxed as motor vehicles and the remaining silo system equipment from qualifying as heavy equipment under Section 23.1241.[8] We liberally construe the applicable statutes to achieve their purposes and promote

---

[8]"[T]he method for valuing leased heavy equipment in sections 23.1241 and 23.1242 is 'neither novel nor unique,'" and we "consider[] it 'eminently reasonable to require [an appellant as a] dealer[] of inventory held for lease or rent in the ordinary course of business to pay taxes only on inventory actually leased or rented.'" *EES Leasing LLC*, 563 S.W.3d at 205 (quoting *EXLP Leasing, LLC v. Ward Cnty. Appraisial Dist.*, 476 S.W.3d 752, 764–65 (Tex. App.—El Paso 2015, no pet.), *aff'd in part, rev'd in part on other grounds*, 563 S.W.3d at 205–06).

justice. *See* GOV'T § 312.006; *Silguero*, 579 S.W.3d at 58. In any event, even if we were to conclude that the statutory application of the tax scheme was ambiguous in this situation, then the ambiguity should be resolved in favor of the taxpayer. *See TracFone Wireless, Inc. v. Comm'n on State Emergency Communications*, 397 S.W.3d 173, 182 (Tex. 2013) (citing *Eidman v. Martinez*, 184 U.S. 578, 583 (1902)).[9] Accordingly, we conclude that the trial court erred when it granted summary judgment in favor of the appraisal district, and that Solaris was entitled to summary judgment as a matter of law. We sustain Appellant's sole issue.

### This Court's Ruling

We conclude that the sand silos qualify as Dealer Heavy Equipment Inventory under Section 23.1241 of the Texas Tax Code and that they should therefore be reinstated in a heavy equipment account. Additionally, we conclude that the transport and base trailers should be taxed as vehicles, consistent with the manner in which Solaris has classified them in the past. Accordingly, we reverse the trial court's summary judgment in favor of the appraisal district, and we render judgment in favor of Solaris.


W. BRUCE WILLIAMS
JUSTICE


April 18, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[9]"Taxing statutes are construed strictly against the taxing authority and liberally for the taxpayer." *Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012). This presumption in favor of the taxpayer arises from an old English rule that "the sovereign is bound to express its intention to tax in clear and unambiguous language." *TracFone*, 397 S.W.3d at 182 (quoting *Eidman*, 184 U.S. at 583).