# Supreme Court of Texas

No. 22-0620

Texas Disposal Systems Landfill, Inc.,
*Petitioner*,

v.

Travis Central Appraisal District, by and through Marya Crigler, acting in her official capacity as Chief Appraiser of Travis Central Appraisal District,
*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

JUSTICE BOYD, joined by Justice Devine, dissenting in part.

Section 42.02(a)(1) of the Texas Tax Code authorizes an appraisal district's chief appraiser to appeal an appraisal review board's order determining a property owner's protest by filing suit against the property owner in district court. The parties here dispute the scope of the district court's authority over that appeal. Agreeing with the property owner, the Court concludes the statute "narrows" the trial court's review "to the protest the appraisal review board heard." *Ante* at 10. Because the property owner protested and prevailed only on the

ground that the appraisal was not equal and uniform, the Court concludes the chief appraiser cannot appeal the appraisal review board's new appraisal on the ground that it fails to reflect the property's market value. *Id.* The Court also holds, however, that this limitation is not jurisdictional. *Id.* at 12. Because the chief appraiser appealed and asserted a ground the property owner did not raise in the protest, the district court must dismiss that claim, but not because it lacks jurisdiction. *Id.* at 15.

I disagree with the Court on both points. Section 42.02(a)(1) delineates a district court's jurisdiction because it establishes and defines a chief appraiser's right to seek judicial review of an administrative agency's order. It does not merely constitute or impose a "procedural" prerequisite or requirement for pursuing the appeal. But it does not restrict the district court's jurisdiction to grounds the property owner raised in the protest. It authorizes an appeal from the appraisal review board's *order*, not from the property owner's *protest*. And other provisions—of both the Tax Code and the Texas Constitution—*require* the district court to resolve all issues raised in the pleadings and ensure that the appraised value is both equal and uniform *and* based on the property's market value.

I thus join the Court's judgment to the extent it affirms the court of appeals' judgment. But to the extent the Court's judgment prohibits the district court from addressing the chief appraiser's claim that the

appraisal review board's appraisal fails to reflect the property's market value, I respectfully dissent.[1]

## I.
## Jurisdictional Limitation

The chief appraiser of each Texas appraisal district is responsible for appraising all taxable property within the district for ad valorem tax purposes. TEX. TAX. CODE §§ 6.01, 25.01(a). A property owner who disagrees with the chief appraiser's appraisal may file a protest before the local appraisal review board (ARB). *Id.* § 41.41(a). A protest may challenge the "appraised or market value," an "unequal appraisal," or

---

[1] The trial court granted the property owner's plea to the jurisdiction in this case because the court concluded that (1) any limit the Tax Code places on a trial court's authority over an appeal from an appraisal review board's order is jurisdictional, and (2) the Tax Code limits a trial court's authority over such an appeal to the ground the property owner raised in the protest. The court of appeals reversed and remanded the case to the trial court, agreeing that (1) any limit the Tax Code places on the trial court's authority is jurisdictional, but concluding that (2) the Tax Code does *not* limit judicial review to the ground the property owner asserted in the protest. *See* 684 S.W.3d 470, 477–78 (Tex. App.—Austin 2022). The Court today affirms the court of appeal's judgment but disagrees with its reasoning. It disagrees with both lower courts' conclusion that the Code's limit is jurisdictional, but it agrees with the trial court that the Code limits review to the ground asserted in the protest. *Ante* at 19. I agree with the court of appeals on both points.

Importantly, however, the Court ultimately concedes that, although the Code limits the trial court's authority to a review of the ground asserted in the protest, it must nevertheless accept evidence of fair market value and consider and address "all issues of fact" and all "new arguments and evidence" to arrive at a de novo determination of the proper appraised value. *Id.* at 17 n.58. And the Court further acknowledges that the property's equal and uniform value must "approach the property's market value," *id.* at 16, so a constitutionally permissible de novo valuation necessarily must consider both. The parties and lower courts should be careful not to miss this point on remand and in future cases.

several other specified errors. *Id.* § 41.41(a).[2] When an owner protests an appraisal, the ARB must conduct an evidentiary hearing and then announce its determination through a written order. *Id.* §§ 41.45, .47(a). If the ARB "finds that the appraisal records are incorrect in some respect raised by the protest," it must "correct the appraisal records by changing the appraised value" or by making "other changes in the appraisal records that are necessary to conform the records to the requirements of law." *Id.* § 41.47(b).

Both the property owner and the chief appraiser are "entitled to appeal . . . an order of the [ARB] determining" a property owner's "protest." *Id.* §§ 42.01(a)(1)(A), .02(a)(1). To appeal, the party must file a petition for review in a local district court. *Id.* §§ 42.21, .22. The district court must review the ARB order "by trial de novo," resolving "all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." *Id.* § 42.23(a).

Texas Disposal Systems Landfill (TDS Landfill) and Travis Central Appraisal District (Travis CAD) dispute the extent to which Section 42.02(a)(1)—which, to repeat, entitles a chief appraiser "to appeal an order of the [ARB] determining" a property owner's

---

[2] A protest may also challenge the property's inclusion on the appraisal records, the denial of a partial exemption, a determination that the property does not qualify for certain appraisal limitations, a determination that the property does not qualify for appraisal, the identification of the taxing units in which the property is taxable, a determination of who owns the property, a determination that the use of land has changed, a failure to give the property owner a notice the owner is entitled to receive, or "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner." TEX. TAX CODE §§ 41.41(a), .411.

"protest"—limits the scope of the appeal it permits.[3] But they *agree* that the limits—whatever they are—are jurisdictional.[4] So did the trial court and the court of appeals in this case, and so do the twenty-four interested parties who submitted amicus curiae briefs, including eleven other appraisal districts,[5] eight property owners or entities representing property owners,[6] three tax-policy research organizations,[7] and two Texas legislators.[8] Despite the fact that no one in this case has raised

[3] Because this case involves a chief appraiser's (as opposed to a property owner's) appeal from an ARB order, the parties here disagree about the extent to which Section 42.02 limits the scope of the appeal. But Sections 42.01 (which grants a property owner a right to appeal) and 42.02 (which grants a chief appraiser a right to appeal) use identical language to describe the scope of the authorized appeal: an "appeal" from "an order of the [ARB] determining a [property owner's] protest." *Id.* §§ 42.01(a)(1)(A), .02(a)(1). So whatever limit this language imposes would apply to an appeal by a property owner as well as an appeal by a chief appraiser.

[4] Both parties agree that Section 42.02(a) establishes and defines the scope of the district court's jurisdiction.

[5] Bexar Appraisal District, Denton Central Appraisal District, El Paso Central Appraisal District, Gillespie County Central Appraisal District, Gonzalez County Appraisal District, Harris Central Appraisal District, Henderson County Appraisal District, Matagorda County Appraisal District, Montgomery Central Appraisal District (through its Chief Appraiser, Janet Jennings-Doyle), San Patricio County Appraisal District, and Williamson Central Appraisal District.

[6] Christopher Investment Company, Omni Hotels & Resorts, Texas Apartment Association, Texas Association of Manufacturers, Texas Building Owners and Managers Association, Texas Realtors, Valero Refining-Texas, LP, and Walgreen Co.

[7] Texas Taxpayers and Research Association, Texas Public Policy Foundation, and Texas Association of Property Tax Professionals.

[8] Texas Senator Paul Bettencourt and Texas Representative Hugh D. Shine.

the issue, the Court holds sua sponte that "the limits the Tax Code imposes" on an appeal from an ARB's order determining a protest "are not jurisdictional." *Ante* at 1–2. I agree with the parties, lower courts, and amici.

The Texas Constitution broadly grants district courts jurisdiction over all "actions, proceedings, and remedies" unless the Constitution or "other law" confers jurisdiction on "some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8. The Texas Tax Code is an "other law" that authorizes actions to challenge a chief appraiser's tax appraisal, and it grants ARBs exclusive, original jurisdiction over such actions. *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam).

When a statute grants exclusive, original jurisdiction over an action to an administrative agency, district courts *lack jurisdiction* to address the claims unless, and only to the extent that, a statute grants them such jurisdiction. *See City of Amarillo v. Hancock*, 239 S.W.2d 788, 791 (Tex. 1951). Parties have "no right to judicial review of an administrative order unless a statute explicitly provides that right or the order violates a constitutional right." *Hous. Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007). A statute that provides a right to judicial review of an administrative order governs the scope of that right *and of the court's jurisdiction* to decide the dispute. *See id.* at 159.

As the Court explains today, we have increasingly "embraced the modern trend of declining to read statutory mandates to be *jurisdictional* prohibitions, absent clear indication that failure to comply

with the mandate also deprives a court of the power to decide the claim." *Ante* at 10 (emphasis added) (citing *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000)). Construing particular statutes, for example, we have held that some procedural prerequisites and requirements—like notice requirements, filing deadlines, venue requirements, and dismissal deadlines—although mandatory, are not jurisdictional. *See, e.g.*, *Tex. Mut. Ins. Co. v. Chicas*, 593 S.W.3d 284, 289 (Tex. 2019); *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306–07 (Tex. 2010); *City of DeSoto v. White*, 288 S.W.3d 389, 398 (Tex. 2009).

In addressing these types of procedural prerequisites, requirements, and mandates, we have preferred to hold that they are not jurisdictional because that holding "strengthen[s] finality and reduce[s] the possibility of delayed attacks on judgments." *City of DeSoto*, 288 S.W.3d at 394. But in each case, we have acknowledged that we must construe a statutory provision to be jurisdictional when the statute demonstrates "that was the Legislature's clear intent." *Id.*; *see In re United Servs. Auto Ass'n*, 307 S.W.3d at 304 ("[W]e have been 'reluctant to conclude that a provision is jurisdictional, *absent clear legislative intent to that effect*.'" (emphasis added) (quoting *DeSoto*, 288 S.W.3d at 393)).

Chapter 42 of the Texas Tax Code imposes numerous procedural prerequisites, requirements, and mandates on parties who desire to appeal an ARB order. The chapter also explicitly addresses whether some (but not all) of these requirements are jurisdictional. As one example, a property owner who appeals an ARB order must nevertheless pay the taxes due before the delinquency deadline, in an amount that is

the lesser of (1) the amount the owner does not dispute is due, (2) the amount due under the ARB order being appealed, or (3) the amount that was due for the preceding tax year. TEX. TAX. CODE § 42.08(b).[9] And an owner who pays under the first option (the amount the owner does not dispute is due) must file with the appeal a written statement "of the amount of taxes the property owner proposes to pay." *Id.* § 42.08(b-1). An owner who fails to timely pay the required amount "forfeits the right to proceed to a final determination of the appeal." *Id.* § 42.08(b). But the statute expressly provides that "[t]he failure to provide" the written statement of the amount the owner proposes to pay "*is not a jurisdictional error*." *Id.* § 42.08(b-1) (emphasis added).

As a second example, a party who wishes to appeal an ARB order must file a petition for review in the district court no later than sixty days after the party received notice of the ARB's order. *Id.* § 42.21(a). An appeal filed by a chief appraiser must be brought against the property owner, and an appeal filed by the property owner must be brought against the appraisal district. *Id.* § 42.21(b). A party's failure "to timely file a petition *bars any appeal*" under Chapter 42. *Id.* § 42.21(a) (emphasis added). More specifically, the statute expressly provides that the district court lacks "jurisdiction" over an appeal if (1) the property was not "the subject of an [ARB] order," (2) the party failed to timely file the petition for review, or (3) the petition fails to provide "sufficient information to identify the property that is the

[9] A property owner may be excused from this payment obligation if he adequately demonstrates that he is financially unable to pay. TEX. TAX. CODE § 42.08(b), (d).

subject of the petition." *Id.* § 42.21(h). But "so long as" these requirements are satisfied, the property owner's failure to *correctly* identify the plaintiff or describe the property in the petition does not deprive the court of "jurisdiction" and "may not be the subject of a plea to the jurisdiction." *Id.*

As a third example, the Tax Code expressly recognizes that the district court lacks "jurisdiction" if the property owner "failed to exhaust" its administrative remedies before the ARB. *Id.* § 42.231(b).[10] But it expressly permits (though it does not require) the district court to remand the action to the ARB so that the owner can cure the failure, "in lieu of dismissing the appeal for lack of jurisdiction." *Id.* And if the court decides to permit a remand to the ARB, the statute allows the parties to agree to waive the need for remand, subject to the court's approval, and

---

[10] This is true for any statutorily authorized appeal to the courts from an administrative agency's order, absent some statutory provision to the contrary. *See, e.g.*, *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 617–18 (Tex. 2023) ("If the agency's exclusive jurisdiction is established, the claimant must pursue and exhaust all available administrative remedies before turning to the courts. 'Until then, the trial court lacks subject-matter jurisdiction' and must dismiss the claims with issues that come within the agency's exclusive jurisdiction.") (quoting *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 428 (Tex. 2017) ("As a rule, when an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. . . . Until then, the trial court lacks subject-matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction.")); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) ("Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. Until then, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction." (citing *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000))).

elect to allow the court to resolve the appeal on the merits despite the owner's failure to exhaust its administrative remedies. *Id.* § 42.231(e).[11]

As a final example, Chapter 42 also provides that (1) a chief appraiser may only appeal "[o]n written approval of the board of directors of the appraisal district," and (2) if "the protest involved a determination of the [property's] appraised or market value," and the ARB determined that the property's value is less than $1 million, the chief appraiser cannot appeal unless she alleges that the owner or his representative "committed fraud, made a material misrepresentation, or presented fraudulent evidence in the [ARB] hearing." *Id.* § 42.02(a)(1), (b), (c). The statute does not explicitly address whether a

[11] The Court suggests that this statutory grant of a right to waive the exhaustion requirement "signals" that the exhaustion requirement is not jurisdictional. *Ante* at 12. This suggestion misreads the statute. The statute permits the district court to remand the action to the ARB, but if the court chooses not to remand, it must "dismiss[] the appeal *for lack of jurisdiction*." TEX. TAX. CODE § 42.231(b) (emphasis added). If the court chooses instead to permit the remand and the parties agree to waive the remand, the waiver is effective only if the court approves it. *Id.* § 42.231(e). As the Court notes, "parties cannot confer jurisdiction by agreement." *Ante* at 12 (citing *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 476 & n.17 (Tex. 2008)). True enough, but *the Legislature* can confer it by statute, *Fed. Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943) ("Jurisdiction of the subject matter exists by operation of law only. . . ."), and nothing prohibits the Legislature from *permitting* parties to waive a prerequisite that would otherwise constitute a jurisdictional hurdle. In other words, the Legislature—exercising its constitutional authority to define the courts' jurisdiction—has granted jurisdiction to the district court only if (1) the appealing party exhausted its administrative remedies before the ARB, (2) the district court remands to allow a party to cure its failure to exhaust, or (3) the district court approves the parties' agreement to waive the necessity of a remand. If none of these requirements is satisfied, the district court *lacks jurisdiction*.

chief appraiser's failure to satisfy these procedural prerequisites deprives the district court of jurisdiction.[12]

As these examples illustrate, Chapter 42 imposes numerous procedural prerequisites, requirements, and mandates on a party who desires to appeal an ARB order. But none of these procedural prerequisites are at issue in this case. In fact, *no* procedural prerequisites, requirements, or mandates are at issue in this case. What is at issue is the meaning of Section 42.02(a)(1): A chief appraiser is "entitled to appeal an order of the [ARB] determining" a property owner's "protest." *Id.* § 42.02(a)(1). This provision does not impose procedural requirements. It describes the "appeal" a chief appraiser is "entitled" to take.

Chapter 42 indisputably defines and limits the scope of an appeal the parties are entitled to take from an ARB order. Property owners, for example, are "entitled to appeal" an "order of the [ARB] determining":

> (A) a protest by the property owner . . . ;
>
> (B) a motion [to correct or change the appraisal roll] filed under Section 25.25;
>
> (C) that the property owner has forfeited the right to a final determination [by] failing to comply with the prepayment requirements . . . ;

[12] The parties agree that these requirements are not at issue here as TDS Landfill has abandoned any argument that the chief appraiser failed to obtain written approval from the appraisal district's board of directors and the parties agree that the property at issue was appraised at an amount greater than $1 million.

(D) eligibility for a refund requested under Section 23.1243; or

(E) that the [ARB] lacks jurisdiction . . . because the property owner failed to comply with a requirement of . . . Chapter 41, or Section 25.25 . . . .

*Id.* § 42.01(a)(1). Chief appraisers, by contrast, are only "entitled to appeal an order of the [ARB] determining: (1) a taxpayer protest . . . ; or (2) a taxpayer's motion to change the appraisal roll filed under Section 25.25." *Id.* § 42.02(a).

The statute limits the parties' right to appeal to ARB orders that determine these specific matters. But these limits are nothing like the statute's procedural prerequisites, requirements, and mandates. Sections 42.01(a)(1)(A) and 42.02(a)(1) define a district court's jurisdiction over an appeal from an ARB order because they do not merely govern "the manner of judicial review;" they "grant a right of judicial review." *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 400 (Tex. 2000). Or as the United States Supreme Court recently described the distinction, they do not merely seek "to promote the orderly progress of litigation;" they "demarcate a court's power." *Harrow v. Dept. of Def.*, 144 S. Ct. 1178, 1183 (2024) (quoting *Henderson* v. *Shinseki*, 562 U. S. 428, 435 (2011)).

Because Sections 42.01(a)(1)(A) and 42.02(a)(1) grant a right of judicial review of an ARB order, define the types of appeals the parties are permitted to take, and "demarcate a court's power" over those appeals, any limitation they place on the scope of a party's right to appeal an ARB order is a legislative limitation on the district court's jurisdiction over that appeal. *Id.*; *see Cont'l Cas. Ins.*, 19 S.W.3d at 405

(“[B]ecause the Workers’ Compensation Act does not provide a right of judicial review, the district court properly dismissed the suit for lack of jurisdiction.”); *Ferrell*, 248 S.W.3d at 159 (“Because the Legislature has not authorized the trial court to grant the relief sought, the trial court lacks jurisdiction over the case.”). I thus agree with the parties, lower courts, and amici that Section 42.02(a)(1)’s limitations are jurisdictional.

## II. Grounds for Appeal

The issue the parties raise in this Court is not whether Section 42.02(a)(1)’s limitations are jurisdictional, but what those limitations are. Specifically, TDS Landfill contends that, because the only ground it advanced in its protest to the ARB was that the chief appraiser’s appraisal was not “equal and uniform,” the chief appraiser cannot appeal the ARB’s order resolving that protest on the ground that the ARB’s appraisal does not reflect the property’s “market value.” The Court agrees, *ante* at 15, but I do not.

In support of their position, the Court and TDS Landfill rely primarily on Section 42.02(a)(1)’s reference to the taxpayer’s “protest.” The Court, for example, states that “[t]he statute authorizes the trial court to hear an appeal of the protest,” and grants “a de novo determination of the taxpayer’s protest.” *Id.* at 10, 15. But that’s simply not what the statute says. The statute says that a chief appraiser is “entitled to appeal *an order of the [ARB]* determining . . . a taxpayer protest.” TEX. TAX CODE § 42.02(a) (emphasis added). Section 42.02(a)’s reference in subsection (1) to an ARB order “determining . . . a taxpayer protest”—like its reference in subsection (2) to an ARB order

"determining . . . a taxpayer's motion to change the appraisal roll"—describes the *types* of ARB *orders* the chief appraiser is entitled to appeal. It does not restrict the scope of the court's power to review the orders it describes.

We recently rejected a very similar contention involving the permissive-interlocutory-appeal statute in *Elephant Insurance Co. v. Kenyon*, 644 S.W.3d 137, 147 (Tex. 2022). That statute authorizes an interlocutory appeal "from *an order* that is otherwise unappealable if '*the order to be appealed* involves a controlling question of law' and if 'an immediate appeal from *the order* may materially advance the ultimate termination of the litigation.'" *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 51.014(d)) (emphases added by the Court in *Kenyon*). Applying that statute in *Kenyon*, the court of appeals concluded "that its only obligation in the permissive appeal was to" decide the "controlling question of law" by "ascertain[ing] whether" the defendant owed a legal duty "in the abstract," and it refused to consider "whether the duty is applicable to or fairly implicated by the facts and circumstances presented." *Id.* at 143, 147.

We rejected the court's "disconcertingly cramped view of its jurisdiction over the appeal" and held that courts must decide permissive appeals, like "any other appeal," by "addressing all fairly included subsidiary issues and ancillary issues pertinent to resolving the controlling legal issue." *Id.* at 147. We explained that, although "'involve[ment]' of a controlling legal issue is essential to securing a permissive appeal, the statute plainly provides that it is *the order* (or, as the case may be, the relevant portion of the order) that is on appeal."

*Id.* Like the permissive-appeal statute, Section 42.02(a)(1) permits an appeal from an ARB *order*, not from a taxpayer's protest. That the ARB order "determin[es] . . . a taxpayer protest" is "essential to securing" an appeal under Sections 42.01(a)(1)(a) and 42.02(a)(1) because that is one of the *types* of ARB orders the statute entitles a party to appeal. But "the statute plainly provides that it is *the order*," and not the protest, "that is on appeal." *Id.*

If Section 42.02(a)(1)'s authorization of an "appeal from an [ARB] *order*" were not clear enough, numerous other statutory and constitutional provisions confirm that a district court's authority to decide an ARB appeal is not limited to the grounds asserted in the taxpayer's protest.

First, several provisions of the Tax Code confirm that the "subject" of an appeal under Section 42.02(a)(1) is the "appraised value" of the property at issue, not the grounds on which the property owner may have protested the valuation. When a property owner protests "the appraised value of the owner's property," and the ARB "finds that the appraisal records are incorrect in some respect raised by the protest," the ARB's order resolving that protest "must state in the order the appraised value . . . as finally determined by the [ARB]" and must "correct the appraisal records by changing the appraised value [as] necessary to conform the records to the requirements of law." TEX. TAX. CODE § 41.47(b), (c). If a chief appraiser elects to appeal the ARB's order stating "the appraised value . . . as finally determined by the [ARB]," the chief appraiser must "indicate where appropriate those entries on the appraisal records that are subject to the appeal." *Id.* § 42.06(d). The

"entries" that are "subject to the appeal" in such a case are the entries that state the "appraised value" of the property at issue. *Id.* § 25.02 (describing entries included in appraisal records). The subject of the chief appraiser's appeal, in other words, is the appraised value as stated in the ARB's order, not the grounds on which the property owner protested the chief appraiser's appraised value.

Second, several provisions confirm that a district court that decides a chief appraiser's appeal must decide all issues raised in the pleadings in order to determine the appraised value *that Texas law requires*. The district court must review the ARB order "by trial de novo," resolving "*all* issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." *Id.* § 42.23 (emphasis added). As we recently explained, a "trial de novo is '[a] new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance.'" *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018) (quoting *Trial de novo*, BLACK'S LAW DICTIONARY (10th ed. 2014)). "A trial de novo is not confined to the same evidence that was presented during the administrative phase," and "in a trial de novo, *a court may consider arguments and evidence that are introduced afresh*." *Id.* (emphasis added).

The nature of the relief the district court grants after conducting a de novo trial will vary depending on the issues the pleadings raise, but in all cases the relief must comply with *all* requirements of Texas law. *See* TEX. TAX. CODE § 42.24. If "the appraised value is at issue," the judgment may "fix the appraised value . . . in accordance with the

requirements of law." *Id.* § 42.24(1). If "inequality in the appraisal . . . is at issue," the judgment may "enter the orders necessary to ensure equal treatment under the law." *Id.* § 42.24(2). And in any case, the court may "enter other orders necessary to preserve rights protected by and impose duties required by the law." *Id.* § 42.24(3).

And third, the Texas Constitution and the Tax Code confirm that Texas law requires that an appraised value must be both (1) "equal and uniform," and (2) based on the property's "value." As the Court notes, *ante* at 3–4, the Constitution requires that all "[t]axation shall be equal and uniform," TEX. CONST. art. VIII, § 1(a), and further provides that "[n]o property of any kind in this State shall ever be assessed for ad valorem taxes at a greater value than its fair cash market value," *id.* § 20. The Court believes that, to "harmonize[] the[se] cumulative constitutional mandates," we must conclude that if "the fair market value of the subject property deviates from its equal and uniform appraised value," the property owner is entitled to the benefit of being taxed at the "*lower* of the two amounts." *Ante* at 16.

But as the Court also acknowledges (although as if only in passing), *see id.* at 2, the Constitution does more than merely prohibit taxation based on an appraisal that *exceeds* the property's fair market value. In addition to that protection, the Constitution affirmatively requires that all property, "unless exempt as required or permitted by this Constitution, . . . *shall be taxed in proportion to its value*, which shall be ascertained as may be provided by law." TEX. CONST. art. VIII, § 1(b) (emphasis added).

Section 1 of Article 8 thus requires that property must be taxed based on appraisals that are *both* (1) "equal and uniform" and (2) based on the property's "value," which must be ascertained as provided by law. *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 574 (Tex. 2018) ("The Texas Constitution requires that taxation 'shall be equal and uniform' and that property 'shall be taxed in proportion to its value.'").[13] We have already rejected the Court's suggestion that the Constitution allows an appraisal that is less than the property's value so long as the appraisal is equal and uniform: "*A property tax is equal and uniform only if it is in proportion to property value*." *In re Nestle USA, Inc.*, 387 S.W.3d 610, 620 (Tex. 2012) (emphasis added). The Constitution requires that TDS Landfill's property be taxed based on an appraisal that is both equal and uniform *and* reflects the property's market value. *Bosque Disposal Sys., LLC v. Parker Cnty. Appraisal Dist.*, 555 S.W.3d 92, 98 (Tex. 2018) (holding that Article 8 Section 1(b) "obligated" appraisal district to account for "market value added to the taxpayers' real property").[14]

---

[13] Section 20 of Article 8, which prohibits taxation based on appraisals that *exceed* the property's fair cash market value, confirms that Section 1(b) generally prohibits the taxation of property based on a value less than the market value by expressly granting the Legislature the power to "pass necessary laws" to authorize a "discount" on taxes owed if the owner pays the taxes early. TEX. CONST. art VIII, § 1(b). This constitutional authorization of a discount would not be necessary if the Constitution otherwise permitted the Legislature to provide for taxation based on appraisals that are less than the property's value.

[14] Although Section 1(b) does not necessarily require the Legislature to equate "value" with "market value" for all purposes, *see EXLP Leasing*, 554 S.W.3d at 576, the Legislature has nevertheless declared that, with limited

In light of Section 1(b) of Article 8, Section 42.02(a)(1) would be *unconstitutional* if it permitted a district court to fix an appraised value that is equal and uniform but not based on the property's market value. To the extent Section 42.02(a)(1) is ambiguous as to whether it grants such permission, the canon of constitutional avoidance requires us to interpret the statute to avoid that constitutional infirmity. *See Paxton v. Longoria*, 646 S.W.3d 532, 539 (Tex. 2022).

Fortunately, however, we need not rely on that canon here. By authorizing an appeal from an ARB's "order," TEX. TAX. CODE § 42.02(a), confirming that the "subject" of the appeal is the "appraised value" of the property at issue, *id.* §§ 41.47(b), (c), 42.06(d), requiring the district court to review the ARB order "by trial de novo," *id.* § 42.23(a), and requiring the district court to grant relief that complies with all requirements of Texas law, *id.* § 42.24, the Tax Code can only be reasonably construed to require the district court to do what the Code expressly requires the court to do: "try all issues of fact and law raised by the pleadings" and "fix the appraised value . . . in accordance with the requirements of law." *Id.* §§ 42.23(a), .24(1). Because the chief

exceptions not applicable here, "all taxable property" must be "appraised at its market value." TEX. TAX. CODE § 23.01(a). "The market value of property shall be determined by the application of generally accepted appraisal methods and techniques," considering "the individual characteristics that affect the property's market value," *id.* § 23.01(b), and using either the "cost," "income," or "market data comparison" appraisal method, whichever is "most appropriate." *Id.* § 23.0101. Although the Constitution permits some "discrepancy between the actual value of the property and the value at which it is assessed for taxes," any discrepancy must be "reasonable," and any "distinctions in the manner in which market value of property is determined" must not be "unreasonable, arbitrary, or capricious." *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 935–36 (Tex. 1996).

appraiser's pleadings challenged the ARB's appraisal on the ground that it fails to reflect the property's market value, I conclude that the district court must resolve that claim regardless of whether TDS Landfill protested the chief appraiser's appraisal on that ground.[15]

## III. Conclusion

For the reasons explained, I conclude that (1) any limitation that Section 42.02(a)(1) imposes on the scope of a chief appraiser's appeal from an ARB order determining a property owner's protest of an ad valorem tax appraisal is jurisdictional, and (2) Section 42.02(a)(1) does not limit the scope of a chief appraiser's appeal to the grounds the property owner asserted in its protest to the ARB. I thus concur in the Court's judgment affirming the court of appeals' judgment remanding the case to the district court, but I respectfully dissent to the extent the Court's judgment prohibits the district court from addressing and resolving the market-value issue on remand.

______________________________

Jeffrey S. Boyd
Justice

---

[15] It seems worth noting that the chief appraiser's pleadings in its appeal to the district court provide the first and only opportunity for the chief appraiser to raise the market-value issue. The chief appraiser initially appraises the property at a value that—at least presumably—the chief appraiser believes is both equal and uniform and based on the property's market value. If a property owner protests the appraisal only on the ground that it is unequal, and the ARB agrees and fixes a value that is equal but without regard to whether it is based on the property's market value, the chief appraiser has no reason or opportunity to complain about that appraisal until it appeals the ARB's order to the district court.

**OPINION FILED:** June 21, 2024